UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY MCWILLIAMS, et al., | ) | CASE NO.:  5:07CV3700 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| S.E., INC., et al., | ) | (Resolving Docs. 77 and 78) |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on motions filed by Defendants S.E., Inc. (Doc. 77) and SPOT, LLC (Doc. 78) ("SPOT") seeking under Fed.R. Civ.P. 12(b)(6) to dismiss the Complaint filed by Plaintiff Timothy McWilliams.  The Court has been advised, having reviewed the motions, pleadings, responses, replies, surreplies, and applicable law.  For the reasons stated below, it is determined that the motions are GRANTED IN PART and DENIED IN PART as detailed herein.

**I.  Facts**

On May 27, 2006, Plaintiff's sister, the decedent Ellen Ann McWilliams, contracted with AerOhio Skydiving Center and David Roberts to skydive.  Roberts was McWilliams' instructor and jumped with her using a tandem harness designed and manufactured by S.E., Inc.  SPOT is the owner of the plane that was used for the dive, and William Milford was the pilot of the plane.

In a tandem jump, the student wears a harness which is attached to the instructor's harness.  The instructor deploys a parachute during the descent because no parachute is

attached to the student. In this case, when Roberts deployed the parachute, the decedent fell downward out of the harness. Without a parachute of her own, decedent tragically fell to her death.

On December 3, 2007, McWilliams filed suit against several of the above-named individuals. In his suit, McWilliams alleged that the defendants violated state standards of care because the tandem harness was defective and that they failed to warn the decedent of the defect. On April 17, 2008, McWilliams amended the complaint to add defendants, including SPOT and the United States Parachute Association. On May 20, 2008, S.E., Inc. moved to dismiss the complaint against it, asserting that the causes of action were preempted by the Federal Aviation Act ("FAA"). On June 2, 2008, SPOT filed a similar motion. McWilliams responded to both motions, both defendants replied, and McWilliams filed surreplies to both replies. As a result, on August 5, 2008, briefing on the motions was concluded. The Court now addresses the pending motions to dismiss.

**II. Legal Standard**

The Sixth Circuit stated in *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a

2

> complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S.Ct. at 1969.

*Id.* at 548.

Moreover, if an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the plaintiff's factual allegations.  *Id*.  Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions.  *Id.*  Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotations and emphasis omitted).

In the pending motions, Defendants seek dismissal of McWilliams' claims under theories of field and conflict preemption.  The federal preemption doctrine stems from the Supremacy Clause of the United States Constitution, which provides in part "the Laws of the United States which shall be made in Pursuance" of the Constitution "shall be the supreme Law of the Land[.]"  U.S. Const., art. VI, cl. 2.  "The phrase 'Laws of the United States' encompasses both federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization." *City of New York v. FCC*, 486 U.S. 57, 63 (1988).  Preemption may be either express or implied.  *Fidelity .Fed. Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982).  In addition, implied

3

preemption has been subdivided into "field preemption" and "conflict preemption." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). Field preemption is found "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (internal quotations omitted). On the other hand, conflict preemption exists "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal citations and quotations omitted). Regardless of the type of preemption at issue, this court's duty is to "determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Id.*

### III. Analysis

The parties have submitted voluminous briefing on the issue presently before the Court. Of most significance to the Court is the Sixth Circuit's decision in *Greene v. B.F. Goodrich Avionics Sys.*, 409 F.3d 784 (6th Cir. 2005). The Court first reviews *Greene* in a detailed manner as it provides guidance on every aspect of the pending motions to dismiss.

In *Greene*, the plaintiff filed suit on behalf of the estate of her husband, Donald Greene. Greene died when the helicopter that he was piloting crashed. His wife filed suit

> claiming that Goodrich defectively designed or manufactured the vertical gyroscope portion of the helicopter's navigation system and that Goodrich was negligent in failing to warn of its defective product.

*Id.* at 787. Important for this Court's purposes, the Sixth Circuit independently reviewed those two claims. With respect to the design defect claim, the Sixth Circuit reviewed

Kentucky law and found that the plaintiff had produced insufficient evidence to support her design defect claim. *Id.* at 788-93.

Next, the *Greene* Court analyzed the plaintiff's failure to warn cause of action. In finding that the failure to warn claim was preempted, the Court noted as follows:

> In granting Goodrich's motion for summary judgment with respect to the failure to warn claim, the district court held that federal law preempts any state-law imposed duties in the realm of aviation. The district court found it significant that Federal Aviation Administration (FAA) guidelines do not propose or mandate a database like Herlihy suggested Goodrich should maintain. In reaching its conclusion, the district court relied on *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999). In *Abdullah*, the Court of Appeals for the Third Circuit joined other circuits in recognizing that Congress intended aviation safety to be exclusively federal in nature. *Id.* at 371. The Supreme Court has stated that preemption may be inferred where "the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where the object sought to be obtained by the federal law and the character of obligations imposed by it reveal the same purpose." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988) (internal quotations omitted). The *Abdullah* court noted that "[t]he federal courts that adjudicated the first major cases involving the [Federal Aviation Act] interpreted its legislative history as evincing Congress's intent to exercise supremacy over the field of aviation safety." *Abdullah*, 181 F.3d at 369. The legislative history of the Federal Aviation Act notes that:
>
> [The purpose of the Federal Aviation Act was to give] [t]he Administrator of the new Federal Aviation Agency full responsibility and authority for the advancement and promulgation of civil aeronautics generally, including promulgation and enforcement of safety regulations.
>
> H.R.Rep. No. 2360, reprinted in 1958 U.S.C.C.A.N. 3741. The House Report also noted that "[i]t is essential that one agency of government, and one agency alone, be responsible for issuing safety regulations if we are to have timely and effective guidelines for safety in aviation." *Id.* at 3761. After analyzing this legislative history, the *Abdullah* court concluded:
>
> It follows from the evident intent of Congress that there be federal supervision of air safety and from the decisions in which courts have found federal preemption of discrete, safety-related matters, that federal law preempts the general field of aviation safety.

5

> *Abdullah*, 181 F.3d at 371. We agree with the Third Circuit's reasoning in *Abdullah* that federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation. The district court did not err in concluding that federal law preempted Greene's state-law failure to warn claim.

*Greene*, 409 F.3d at 794-95.

### A. Failure to Warn Claim Against Defendant S.E., Inc.

With respect to McWilliams' failure to warn claims against S.E., Inc., the Court agrees that *Greene* is controlling. Both *Greene* and *Abdullah*, the case upon which it relies, are written broadly. The *Abdullah* Court held as follows: "While some courts have found federal law to preempt discrete aspects of air safety, … we hold that federal law establishes the applicable standards of care in the field of air safety, generally, thus preempting the entire field from state and territorial regulation." *Abdullah*, 181 F.3d at 367 (internal citations omitted).

In an attempt to avoid this result, McWilliams asserts that "'sport skydiving' and 'harness design and manufacture' are two fields separate and distinct from 'aviation safety.'" Doc. 86 at 13. While McWilliams' design defect claim is addressed below, to the extent McWilliams has relied upon this argument to support his claim that the failure to warn cause of action is not preempted, his argument is not well taken.

If anything, sport skydiving is a subset of aviation safety. First, the Court acknowledges that sport skydiving does have aspects which differ from the general category of aviation safety. The sport is generally an intrastate activity, rarely crossing state lines. Furthermore, aviation safety is generally focused on keeping passengers safely on the airplane, while sport skydiving of course is focused on those who willingly jump from an airplane. However, it is undeniable that the FAA has to some extent

6

regulated sport skydiving and McWilliams has not challenged the FAA's authority to regulate sport skydiving. In an advisory circular, the FAA noted as follows: "Sport parachute jumping (also called skydiving) activity continues to increase and is an FAA-recognized aeronautical activity." Doc. 86-9 at 1. Consequently, the Court finds that sport skydiving falls within the realm of aviation safety. As such, the holding in *Greene* precludes McWilliams from raising any state law claim for failure to warn of the harness' alleged defect.

### B. Manufacturing Defect Claim Against Defendant S.E., Inc.

S.E., Inc. has also argued that McWilliams' design defect claim is preempted. Upon review of the parties' extensive briefing of the issue, the Court cannot agree.

First, as detailed above, the *Greene* Court reviewed a design defect claim. While conducting an extensive preemption analysis of the plaintiff's failure to warn claim, the Court made no mention of preemption when analyzing the design defect claim. Instead, the *Greene* Court relied heavily on *state law* in reaching its conclusion that the evidence did not support such a claim. *Greene*, 409 F.3d at 788. ("Under Kentucky law, a manufacturing defect exists," and "With respect to Greene's strict liability theory, Kentucky has adopted"). While involving the gyroscope on a helicopter, this Court nevertheless finds the Sixth Circuit's analysis instructive. If the *Greene* Court's holding were all encompassing, that is preemption applied to even design defect claims, the thorough analysis of Kentucky law would have been a fruitless exercise in *Greene*. As such, the *Greene* Court's holding convinces this Court that while the FAA's preemptive effect is broad, it is not the type of complete preemption suggested by S.E., Inc.

7

In support of its motion, S.E., Inc. asserts that "[t]he FAA's intensive industry regulation and product approval requirements address and preempt the very standards the plaintiff complains the Harness fails to meet." Doc. 77 at 11. In support, S.E., Inc. relies upon the fact that its harness is subject to the general certification procedures imposed by the FAA pursuant to 14 C.F.R. § 21.601. 14 C.F.R. § 21.601(b)(1)-(2) provide as follows:

> (1) A Technical Standard Order (referred to in this subpart as "TSO") is issued by the Administrator and is a minimum performance standard for specified articles (for the purpose of this Subpart, articles means materials, parts, processes, or appliances) used on civil aircraft.
>
> (2) A TSO authorization is an FAA design and production approval issued to the manufacturer of an article which has been found to meet a specific TSO.

S.E., Inc. also asserts that it must, pursuant to regulation, seek approval for any significant deviation from an approved design. In response, McWilliams asserts that it is industry leaders that primarily control the standards for harness design rather than the FAA.

Upon review, the Court is not persuaded that the FAA has issued significant regulations related to the design of the harness. In what appears to be the only relevant TSO, TSO-C23d (Doc. 86-3), the FAA set "Minimum Performance Standards." None of these standards reference the *design* of the tandem harness at issue. The Final Rule issued that modified the CFR section on tandem parachutes, noted as follows:

> Section 105.45 Use of Tandem Parachute Systems
>
> Proposal: This proposed section provided for tandem parachute operations, and incorporated the conditions and limitations, with some modification, set forth in the grants of exemption issued to experimental tandem parachute operators. These conditions and limitations include

8

> instructor experience requirements, briefings for passenger parachutists, equipment inspections, and packing requirements.

66 F.R. 23543, 23550. Noticeably absent from this Rule is any mention of the regulation of the design of the tandem parachute system. That same Rule also noted that the "USPA's recommendation that the manufacturer's directives for tandem parachute systems should be mandatory" was "outside the scope of this rulemaking[.]" *Id.*

> Based upon that final rule, 14 C.F.R. § 105.45 was modified and reads as follows:
>
> (a) No person may conduct a parachute operation using a tandem parachute system, and no pilot in command of an aircraft may allow any person to conduct a parachute operation from that aircraft using a tandem parachute system, unless--
>
> (1) One of the parachutists using the tandem parachute system is the parachutist in command[.] … [and]
>
> (iv) Has successfully completed a tandem instructor course *given by the manufacturer of the tandem parachute system* used in the parachute operation or a course acceptable to the Administrator.
>
> (v) Has been certified *by the appropriate parachute manufacturer* or tandem course provider as being properly trained on the use of the specific tandem parachute system to be used.
>
> (2) The person acting as parachutist in command:
>
> …
>
> (ii) *Uses the harness position prescribed by the manufacturer* of the tandem parachute equipment.
>
> (b) No person may make a parachute jump with a tandem parachute system unless …
>
> (3) The tandem parachute system contains an operational automatic activation device for the reserve parachute, *approved by the manufacturer of that tandem parachute system*. The device must—
>
> (i) Have been maintained in accordance *with manufacturer instructions*[.]

(emphasis added). The above-quoted provision reveals the heavy hand that manufacturers play in regulating the tandem parachuting industry. Furthermore, absent from the C.F.R. provision is any reference to any design regulations for tandem harnesses.

As a contrast, the Court highlights a decision relied upon by S.E., Inc., *In re: Deep Vein Thrombosis Litigation*, 2005 WL 591241 (N.D.Cal. Mar. 11, 2005). In that matter, the court found that a claim of seat design defect was preempted. In reaching its conclusion, the court noted that "FAA regulations have left no room for states to regulate the sufficiency of aircraft seat design." *Id.* at *15. However, unlike the regulations at issue herein, the regulations relied upon in the *Deep Vein Thrombosis* litigation could properly be classified as extensive regulations of the *design* of the product at issue. 14 C.F.R. § 23.785(a) requires that airplane seats "be designed" to support a minimum weight. Subsection (b) requires that specific elements be included in the seat design. Subsection (d) requires that the restraint system on the seat have a single-point release. 14 C.F.R. 25.562(a) requires that the seat "must be designed as prescribed in this section" and goes on to state specific tests that the seat must pass. Similarly, 14 C.F.R. § 23.562(a) mandates that each seat "must be designed to protect each occupant during an emergency landing[.]"

The tandem harness at issue does not have any equivalent design requirements. In fact, despite the extensive briefing by the parties, it is not possible to determine the federal standards for the tandem harness. The Court is mindful that the harness must go through the general certification process as adopted by the FAA. However, there is nothing to suggest that this process is anything more than general, nor is there any

10

suggestion that the design submitted is subject to any type of specific review beyond the general certification procedures.

Under the theory proposed by S.E., Inc., no design defect claim could be brought so long as the harness had been approved by the FAA.  Given the lack of any specific standards for the design of the harness, the Court is unwilling to accept this view.  While the sixteen years of testing that was conducted while the tandem harness was used under an FAA exemption certainly supports an argument that the harness is not defective, the lack of any regulations relating to the design of such a harness precludes any finding that the FAA intended to extensively and exclusively regulate such a design.

Finally, the Court's opinion should not be construed to have overlooked the numerous arguments put forward by all the parties involved.  The Court is appreciative of the detailed briefing performed in this difficult matter.  Each of the arguments and counterarguments raised by the parties has been considered.  Following the guidance provided by *Greene*, the Court is convinced that preemption does not apply to the design defect claim.

To the extent that S.E., Inc. has also argued conflict preemption, the Court finds no merit in that position.  S.E., Inc. is correct that permitting this claim to go forward would subject it to litigation despite the fact that it complied with the FAA regulations. As detailed above, however, the only relevant regulations issued by the FAA do not discuss the design of the harness.  Even S.E. Inc. notes as follows:  "Although a manufacturer is free to develop its design and determine how to make a harness, that design and manufacturing process must be approved" by the FAA.  Doc. 93 at 6.  This statement recognizes that there are no "hard and fast" standards for the design of the

11

harness. Consequently, utilizing a state standard for determining a design defect does not conflict with the federal regulations. Rather, such standards would fill in gaps in the federal regulation of tandem harnesses.

Finally, S.E., Inc. indicates that "[s]kydiving equipment is subject to the same approval process as the gyroscope in *Greene*." *Id.* As detailed above, the *Greene* Court reviewed the sufficiency of the evidence under *state law* when it reviewed this design defect claim. It made no mention that such a claim was preempted. Consequently, the logic in *Greene* compels a conclusion that the design defect claim is not preempted simply by passing the general certification of the FAA.

Based upon the above, S.E. Inc.'s motion to dismiss is GRANTED IN PART and DENIED IN PART. The failure to warn claims are preempted, while the design defect claims may go forward.

### C. SPOT, LLC's Motion to Dismiss

McWilliams' complaint contains only one allegation against SPOT. Specifically, paragraph 23 of the complaint asserts as follows:

> New Party Defendants William B. Milford and SPOT, LLC acted negligently, recklessly, willfully, wantonly, and with malicious indifference to and a conscious disregard of the safety of its customers, including Plaintiff's Decedent herein. New Party Defendants failed to provide adequate warning or instruction to their customers, including Plaintiff's Decedent, with respect to the proper use of tandem harnesses, failed to confirm that their customers, including Plaintiff's Decedent, were properly fitted within said tandem harness, failed to confirm that tandem harnesses provided to their customers, including Plaintiff's Decedent were safe for their intended use, and failed to ultimately certify that the tandem jump their customers were to take, including Plaintiff's Decedent, was safe. All of the aforementioned directly and proximately caused Plaintiff's Decedent to suffer the injuries and wrongful death as set forth herein.

12

Doc. 55 at 6.  As detailed above, the Court has concluded that any state law failure to warn claims are preempted.  Accordingly, to the extent that a failure to warn claim is alleged, dismissal is appropriate.

In his response to SPOT's motion to dismiss, McWilliams alleges for the first time that SPOT "breached its duty when it failed to adequately train and / or supervise its employee, Milford[.]"  Doc. 92 at 9.  Even a liberal interpretation of McWilliams' pleading does not include a negligent training and/or supervision claim.  Accordingly, the Court will not consider such a claim.

To the extent that McWilliams claims that SPOT had some duty to inspect the harness or ensure its safety, the Court has found no legal authority for imposing such a duty.  SPOT had no contractual relationship with McWilliams.  Furthermore, while McWilliams alleges that SPOT's duty stems from its relationship with the pilot, the complaint does not allege any such relationship.  "A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship.  It is insufficient to merely plead the legal conclusion of agency."  *Bird v. Delacruz*, 2005 WL 1625303, at *4 (S.D.Ohio July 6, 2005) (quoting *Gunderson v. ADM Investor Servs., Inc.*, 85 F.Supp.2d 892, 905 (N.D.Iowa 2000).  "While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss."  *Id*. (quoting *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 10 F.Supp.2d 922, 931 (N.D.Ill. 1998).  McWilliams has not alleged any agency relationship between the pilot and the aircraft owner; accepting as true that Milford was the pilot of the plane does not establish agency.  Furthermore, McWilliams mere legal conclusion that "[a]ll acts of New Part

13

Defendant SPOT, LLC were done by its agents[,]" is insufficient to establish agency. McWilliams, therefore, may not impute Milford's alleged negligence to SPOT. Accordingly, SPOT's motion to dismiss is GRANTED.

### IV. Conclusion

S.E., Inc.'s motion to dismiss (Doc. 77) is GRANTED IN PART and DENIED IN PART. SPOT, LLC's motion to dismiss (Doc. 78) is GRANTED.

IT IS SO ORDERED.


August 26, 2008 /s/ *Judge John R. Adams*
Date JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT