UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Timothy McWilliams, | ) | CASE NO.  5:07CV3700 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| S.E. INC., et al., | ) | [RESOLVING DOC. 158] |
| | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is Defendant S.E. Inc's motion for summary judgment (Doc. 158).  The Court has been advised, having review the motion, response, reply, pleadings, exhibits, and applicable law.  For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**I. FACTUAL BACKGROUND**

Ellen Ann McWilliams ("Decedent") was fatally injured in a tandem skydiving accident on May 27, 2006.  Decedent signed up with skydiving company AerOhio to perform her first tandem sky-diving jump and paid an additional fee to have her skydive videotaped.  Decedent arrived at the AerOhio skydive center and completed and signed the required paperwork, including an "Adult Release, Waiver and Indemnity Agreement" ("the Waiver").  Decedent was then was briefed on the ground for a short period of time.  Following her briefing, Decedent was placed in a student tandem harness by a certified tandem instructor, Jeffery Antoon.  The harness Decedent wore was a Dual Hawk Tandem Harness ("the Harness") manufactured by Defendant S.E., Inc. ("Strong").  While Antoon did the initial preparations for Decedent's jump, he was not

her instructor for the entirety of the dive. Another certified tandem instructor, Defendant David Roberts, was responsible for completing the jump with Decedent.

Stills from a video-recording of Decedent's dive show her approaching and then boarding the plane with a visibly loose Harness. Roberts, however, maintains that although Decedent's Harness was loose upon boarding the plane, he fully secured all straps once Decedent was on board the plane. Roberts' account has thus far been confirmed by another instructor, Ryan Petrie. The stills from the jump itself, however, show that at the time Decedent jumped from the airplane and began the skydive, at least one strap, the lower back strap, was maladjusted and tucked under her leg strap, not across her lower back as it should have been.

It is largely undisputed by the parties that the first few seconds of the jump were unremarkable; however, at the point of parachute deployment, roughly 6,500 feet above the ground, Decedent slipped out of the Harness. Plaintiff contends that Decedent slipped out of the Harness at least in part because of the maladjustment of the lower back strap. Because it was not across her lower back, but was tucked under her leg strap, Decedent's Harness contained a "hole" that she slipped through. Decedent's injuries upon impact were fatal.

After Decedent slipped from the Harness, Roberts continued his descent with the aid of the parachute. He landed safely less than a mile from Decedent. Upon landing, Roberts took off his harness and parachute and walked to a nearby house, where he used a cell phone to call AerOhio. After AerOhio and local authorities responded to the scene, Decedent's Harness was recovered. Her Harness was still attached to Roberts' instructor harness and parachute and there were no signs of rips or tears in Decedent's Harness.

In addition to Strong, Plaintiff filed suit against a number of other individuals involved with the jump or the design of the Harness. As only Strong has moved for summary judgment at this time, the Court will focus its analysis on Strong's contentions.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of proving the absence of any "genuine issues" is borne by the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining whether a factual issue is "genuine" requires considering the applicable evidentiary burdens. *Id.* at 252. Moreover, when deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushito Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Moreover, Fed. R. Civ. P. 56(e)(2) states:

3

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set our specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Accordingly, summary judgment analysis examines whether a trial is necessary and judgment is therefore appropriate when there are no genuine issues of material fact. *Anderson*, 477 U.S. at 250.

### III. LAW AND ANALYSIS

#### a. Unforeseeable Misuse

Strong first contends that summary judgment is appropriate because Roberts' misuse of the Harness was unforeseeable.  The Court finds that there exists a genuine issue of fact surrounding the foreseeability of Roberts' alleged misuse.

It is apparent from both the testimony and the stills of the videotape that Decedent's Harness was maladjusted to some extent and that Roberts misused the Harness.  Roberts candidly admits that he did not follow all of Defendant's instructions regarding harness safety, as he failed to fully adjust all the straps on Decedent's Harness *prior to* Decedent boarding the airplane.  Furthermore, the stills show that during freefall, at least one of Decedent's Harness straps, the lower back strap, was not in the correct position.  Plaintiff's expert, Bruce Trenholm, reviewed the video of the dive and concluded as follows: "Horizontal back strap is located under the left leg strap, main lift web, back diagonal and lower attachment out to stops."  Accordingly, other than Roberts' self-serving statement asserting that he adjusted all of the straps once on board the plane, all evidence indicates that the Harness was misused to some extent.

"Ohio courts have held that design defect claims may include the failure to design a product to prevent *foreseeable misuse*[.]" *Barrett v. Waco Internatl., Inc.*, 123 Ohio App.3d 1, 8

(1997) (Emphasis added and citation omitted.).  Summary judgment, therefore, is appropriate only "where the product is used in a capacity which is unforeseeable by the manufacturer and completely incompatible with the product's design."  *Cox v. Oliver Machinery Co.*, 41 Ohio App.3d 28, 31 (1987).  "'Misuse' of a product suggests a use which was unanticipated or unexpected by the product manufacturer, or unforeseeable and unanticipated."  *Markus v. SICO, Inc.,* 1999 WL 304520, at *4 (Ohio Ct. App. May 13, 1999).  "In determining whether [defendants] should have recognized the risks involved, only those circumstances which they perceived, or should have perceived, at the time of their respective actions should be considered."  *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77  (1984).

> Foreseeable uses of a product, foreseeable risks associated with a product, benefits associated with a product, and consumer expectations regarding a product's uses and risks are ordinarily all factual questions.  The determination whether a design defect exists involves a balancing of these factual issues.  Therefore, summary judgment will rarely be granted in design-defect cases when any of these elements is disputed.

*Welch Sand & Gravel, Inc. v. O&K Trojan, Inc.*¸ 107 Ohio App.3d 218, 225 (1995).

In the instant case, the foreseeability of Roberts' misuse of the Harness raises a genuine issue of material fact.  In his affidavit, Strong Enterprises president, Edward T. Strong, stated as follows with respect to misuse:

> We are well aware that humans make mistakes and designed the Harness with that in mind.…  In a further effort to protect against human error, Strong Enterprises included sufficient webbing straps so that the student would remain in the Harness if a Tandem Instructor failed to adjust a particular strap or two.

Doc. 159 at 14-15.  Furthermore, during his deposition, Edward Strong admitted that Strong was aware during its design phase that there was a possibility that "an instructor might make a mistake and not properly cinch the harness down such that that *might cause a safety problem for a passenger*[.]"  Doc. 180-1 at 34 (emphasis added).

5

Strong effectively asks this Court to draw a fine line between its admitted foreseeable misuse of the product and the alleged misuse herein. Strong seeks to have this Court conclude that it was foreseeable that Roberts would fail to adjust one or two straps but completely unforeseeable that Roberts would fail to adjust "almost every webbing strap of the Harness on a particular student[.]. *Id.* at 15. Strong's argument would require this Court to draw an arbitrary line with respect to misuse of the product. The Court would be required to say that a*s a matter of law*, the failure to adjust two straps was foreseeable, but the failure to adjust four straps was not foreseeable. The drawing of such a line is more appropriate for a jury. Accordingly, the Court declines to grant summary judgment on the grounds that the misuse of the Harness was unforeseeable as a matter of law.

### b. Assumption of the Risk

Strong next contends that Decedent assumed the risk that Roberts would misuse the harness. Strong, therefore, concludes that any recovery by Plaintiffs is barred under the assumption of the risk doctrine. The Court finds summary judgment to be inappropriate under this theory.

If a claimant expressly assumed the risk that was the direct and proximate cause of her claim, there exists a complete bar to the recovery of damages. Ohio Revised Code ("O.R.C.") § 2307.711(B)(2). "Express assumption of the risk involves 'an affirmatively demonstrated, and presumably bargained upon, choice by the plaintiff to relieve the defendant of his legal duty toward the plaintiff.'" *Zigler v. Avco Corp.*, 165 Ohio App.3d 319, 324 (2005) (quoting Keeton, Prosser & Keeton on the Law of Torts 496 (5 Ed.1984)). "For example, it occurs when a person expressly contracts with another not to sue for any future injuries caused by the negligence of

6

that second person[.]" *Knopp v. Dayton Machine Tool Co.*, 2004 WL 2913950, at *4 (Ohio Ct. App. Dec. 8, 2004).

The focal point of Strong's argument is the waiver Decedent signed with AerOhio and Roberts. There is no question that Decedent acknowledged the risks associated with skydiving in the Release. The Court, however, finds it unlikely that express assumption of the risk is available to Strong as a defense. There was no bargained for benefit that flowed from Strong to Decedent. Rather, Decedent bargained with Roberts and AerOhio. As such, the Court does not believe that express assumption of the risk applies.

However, primary assumption of the risk is an available defense whereby a defendant owes no duty to protect a plaintiff against certain risks that are so inherent in an activity that they cannot be eliminated. *Sproles v. Simpson Fence Co.*, 99 Ohio App.3d 72, 78 (1994).

> [O]nly those risks directly associated with the activity in question are within the scope of primary assumption of risk, so that no jury question would arise when an injury resulting from such a direct risk is at issue, meaning that no duty was owed by the defendant to protect the plaintiff from that specific risk.

*Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432 (1996). There is little doubt that death is an inherent risk associated with skydiving. However, exposure to a defectively designed harness is not such an inherent risk. *See Goffe v. Mowell*, 1999 WL 55693 (Ohio Ct. App. Feb. 5, 1999) (concluding that design defect in a race track was not an inherent risk of go-cart racing). Accordingly, the Court declines to enter summary judgment under the primary assumption of the risk doctrine.

### c. Design Defect

Finally, Strong contends that the Harness was simply not defective. The Court finds that summary judgment is not warranted with the record presented herein.

7

Design defect claims in Ohio are governed by O.R.C. § 2307.75 which provides as follows:

(A) Subject to divisions (D), (E), and (F) of this section, a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section.

(B) The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;

(5) The extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

(C) The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

(3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation.

…

8

> (F) A product is not defective in design or formulation if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product.

Accordingly, the Court conducts its review with the above framework in mind.

Strong's argument here focuses upon two claims rejected by the Court at this stage of the litigation. First, as detailed above, there is a question of fact surrounding the scope of the foreseeable misuse of the product. Accordingly, Strong's assertions that there is no evidence that the design is "dangerous when used as intended or as reasonably foreseeable" and there the "only evidence shows that it is dangerous if used in an unforeseeably reckless fashion" carry no weight. Furthermore, this Court previously found the design defect claim was not preempted. In so finding, this Court noted as follows: "Upon review, the Court is not persuaded that the FAA has issued significant regulations related to the design of the harness. In what appears to be the only relevant TSO, TSO-C23d (Doc. 86-3), the FAA set 'Minimum Performance Standards.' None of these standards reference the *design* of the tandem harness at issue." Doc. 111 at 8. As such, the fact that the Harness has been federally regulated also carries little weight in the Court's analysis.

While Strong has raised little other argument, the Court has independently reviewed the framework set forth in the Revised Code. With respect to the foreseeable risks of the product, the Court finds as follows. There is no question that the "nature and magnitude of the risks of harm" are exponentially larger in this matter than in a typical design defect claim. The parties have aptly illustrated the inherent dangers in skydiving. Adding a defective design to the inherent dangers causes the risk of death to be significantly enhanced.

With respect to the likelihood that a design would cause harm "in light of the intended and reasonable foreseeable uses," the Court relies upon its analysis above.  Having found that an issue of fact exists regarding whether Roberts' alleged misuse was foreseeable, the Court finds that the likelihood that this design would cause harm also presents an issue of fact.  If a jury were to conclude that Roberts' misuse was foreseeable, the question remains whether there is a likelihood of harm.  On this, the experts appear to agree.  With the straps positioned improperly, a "hole" existed that allowed for Decedent to fall from the Harness.  As such, a jury could conclude that there was a likelihood that the design of the Harness would cause harm, even when used in a foreseeable manner.

Strong is correct that the foreseeable risks are somewhat mitigated by the fact the Harness conformed to federal regulations prior to it entering the market.  However, as noted above, those regulations were minimal.

Strong is also correct that the Harness provided a benefit to consumers, allowing for tandem jumps.  However, there is nothing to suggest that this particular design has "any performance or safety advantaged associated with" it.  Furthermore, there is little question that a feasible alternative design existed.  In fact, the evidence indicates that a "Y" strap modification was designed within one week of Decedent's accident.

Overall, it is nearly impossible for the Court to place a precise value on the benefits offered by the Harness and attempt to balance those benefits with the foreseeable risks associated with the product.  For one, the foreseeable risks are in large part dictated by the foreseeable misuse analysis conducted above.  As an issue of fact exists there, the Court cannot fully determine the risks associated with the Harness.  However, the magnitude of those risks is undeniable.

Based upon the above, the Court finds that it most appropriate for a jury to balance the risks and benefits of the Harness design. The Court simply cannot say as a matter of law that the benefits of the design outweigh its risks. Accordingly, summary judgment is inappropriate.

### d. Statute of Repose

Strong also alleges that the statute of reposes bars the claims raised by Plaintiff. The Court disagrees.

Ohio's statute of repose states in relevant part as follows:

> [N]o cause of action based on a product liability claim shall accrue against the manufacturer or supplier of a product later than ten years from the date that the product was delivered to its first purchaser or first lessee who was not engaged in a business in which the product was used as a component in the production, construction, creation, assembly, or rebuilding of another product.

O.R.C. § 2305.10(C)(1).

Strong asserts that the statute of repose shields it from liability in the instant case because it has been manufacturing and selling the Harness for over 20 years with no substantial changes. Strong argues that Ohio's statute does not "specify that it only applies to the individual product in the particular accident." The Court disagrees.

Ohio's statute bars suit arising more than ten years from the date that "*the* product was delivered[.]" The definite article, "the," is a word of limitation. *See Crosby-Edwards v. Ohio Bd. of Embalmers & Funeral Directors*, 175 Ohio App.3d 213, 221 (2008) (citing Black's Law Dictionary (6th Ed.1990) 1477. ("In construing statute, definite article 'the' particularizes the subject which it precedes and is word of limitation as opposed to indefinite or generalizing force 'a' or 'an'"). As such, the statute begins with a general reference to "a" product, but the scope is narrowed to "the" product when the limitations period is described. Accordingly, the Court declines to adopt the expansive interpretation offered by Strong.

11

The Court is cognizant that the Ohio legislature enacted the statute of repose in an effort to:

> recognize that, more than ten years after a product has been delivered, it is very difficult for a manufacturer or supplier to locate reliable evidence and witnesses regarding the design, production, or marketing of the product, thus severely disadvantaging manufacturers or suppliers in their efforts to defend actions based on a product liability claim[.]

Ohio 2004 S.B. 80, § 3(C)(5). However, given that the particular product at issue was delivered less than ten years ago, this problem does not appear to be present. Furthermore, given that Strong has presented a substantial amount of historical data about the design of the Harness, it is clear that there has been no difficulty in finding reliable evidence on the topic.

The Harness worn by Decedent in the instant case was delivered to AerOhio, the first purchaser of this particular Harness, in 2001—less than 10 years before the date of Decedent's accident. Therefore, the plain language of the statute, along with the intent of the legislature in enacting the statute of repose, compels denial of the motion on this ground. Strong's statute of repose is rejected.

### e. Preemption

In its motion for summary judgment, Strong also seeks to relitigate the issue of preemption. The Court declines to review this issue a second time.

As noted above, the Court has previously resolved the issue of preemption. While Strong contends that it "developed evidence of the extensive government regulation" of the Harness, the Court disagrees. At the time of the motion to dismiss, the Court fully reviewed the regulation of the Harness. Nothing in Strong's current briefing has altered the Court's view on preemption. The Court, therefore, will not revisit its position on the inapplicability of preemption to the design defect claim.

### f. Breach of Express Warranty

Strong also argues that summary judgment is appropriate on Plaintiff's claim of breach of an express warranty. The Court agrees.

In his complaint, Plaintiff allege that the "subject harness was defective because it did not conform, when it left the control of Defendant S.E., Inc., to an express representation made by said Defendant, with respect to its character, quality or safety, pursuant to the provision of O.R.C. § 2307.77." Doc. 55 at 3-4. The Revised Code sets forth the applicable standard of law for a breach of warranty claim in a products liability suit as follows:

> A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

O.R.C. § 2307.77. A plaintiff seeking recovery under § 2307.77 must establish the following elements:

> (1) that the manufacturer made a representation as to a material fact concerning the character or quality of the manufacturer's product; (2) that the product did not conform to that representation; (3) that the [decedent] justifiably relied on that representation; (4) that the [decedent's] reliance on the representation was the direct and proximate cause of the [decedent's] injuries.

*Cervelli v. Thompson/Center Arms*, 183 F.Supp.2d 1032, 1045 (S.D. Ohio 2002) (quoting *White v. DePuy, Inc.*, 129 Ohio App3d 472, 484-85 (1998)). Where a plaintiff fails to establish that a representation was actually made by the manufacturer, a claim for breach of express warranty must fail. *Id.* In its motion for summary judgment, Strong asserted that there is no evidence of any representation or warranty made by it to Decedent. Plaintiff, in his response, failed to produce any evidence of such a statement or representation made by Strong. Therefore, summary judgment in favor of Strong is appropriate on this claim.

13

### g.  Punitive Damages

The Revised Code also establishes the applicable standard for awarding punitive damages in a products liability action.  The Code provides in pertinent part as follows:

> punitive or exemplary damages shall not be awarded against a manufacturer or supplier in question in connection with a product liability claim unless the claimant establishes, by clear and convincing evidence, that harm for which the claimant is entitled to recover compensatory damages in accordance with section 2307.73 or 2307.78 of the Revised Code was the result of misconduct of the manufacturer or supplier in question that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question. The fact by itself that a product is defective does not establish a flagrant disregard of the safety of persons who might be harmed by that product.

O.R.C. § 2307.80(A).  In the instant case, the Court finds that no reasonable jury could conclude from the evidence that Strong exhibited a flagrant disregard for Decedent's safety.  Strong has introduced evidence of its extensive testing of the Harness, its compliance with the minimal FAA regulations, and the fact that the Harness has been used in millions of jumps without ever experiencing an accident of this kind.  In response, Plaintiff has stated in conclusory fashion that "Strong knew that [decedent] could fall through the harness hole yet did nothing to prevent her from doing so[.]"  Doc. 174 at 30.  This statement, however, is directly refuted by the evidence before the Court.  Edward Strong stated that he never foresaw that an individual could misuse the Harness in the manner Roberts allegedly misused it.  There is nothing to suggest that Strong was ever aware of any faults in the design of its Harness.  Simply stated, there is nothing to suggest that Strong acted in a manner that flagrantly disregarded the safety of Decedent.

The Court does not find the precedent relied upon by Plaintiff to be persuasive.  In *McConnell v. Cosco, Inc.*, 238 F.Supp.2d 970 (S.D.Ohio 2003), the court found that summary judgment was improper on the claim for punitive damages.  In so finding, the Court noted that the plaintiffs introduced evidence "that Defendant Cosco knew of the risks associated with its

14

high chair[.]" *Id.* at 983.  As indicated above, that evidence is lacking herein.  For that matter, the millions of jumps without an injury suggest that Strong had no reason to believe that its design presented *any* risks to Decedent.  Accordingly, summary judgment is granted in Strong's favor on the claim for punitive damages.

## IV. CONCLUSION

Based upon the aforementioned reasons, Strong's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Strong's motion for summary judgment on the claims for breach of warranty and punitive damages is GRANTED.  On the remaining issues, Strong's motion for summary judgment is DENIED.

IT IS SO ORDERED.


DATED: October 29, 2009                       */s/ John R. Adams*
                                               JUDGE JOHN R. ADAMS